UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| DANAH C. CHRISTMAN and | * |
| MARY Y. CHRISTMAN, | * |
|     Debtors | * |
| | *   Case No. 1-05-06084 |
| DANAH C. CHRISTMAN and | * |
| MARY Y. CHRISTMAN, | * |
|     Objectants | * |
| | *   CHAPTER 13 |
| v. | * |
| | * |
| eCAST SETTLEMENT CORP., | * |
|     Respondent | * |
| | * |

## OPINION

Before the Court are the Objections of Danah C. and Mary Y. Christman ("Debtors") to proofs of claim filed by eCAST Settlement Corp ("eCAST") as assignee of "General Electric/LOWES/RETAIL" ("Lowes"), "General Electric/ JCP Consumer" ("JC Penney"), "Chase Manhattan Bank USA, NA" ("Chase"), and "Bank of American/FIA Card Services, f/k/a MBNA" ("MBNA"). For the reasons that follow, I will sustain the objections to the JC Penney and Lowes claims, but will overrule the Debtors' objections to the Chase and MBNA claims.[1]

## Factual History

On September 10, 2005, Debtors filed their petition under chapter 13. Debtors also filed Schedule "F" listing nineteen creditors holding $121,402.00 in unsecured claims, including the following five debts:

---

[1] I have core jurisdiction to hear this matter pursuant to 28 U.S.C. §157(b)(2)(B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Rule 9014.

| Account No. | Creditor's Name as listed on Schedule F | Amount of Claim |
|---|---|---|
| 2463 | "Lowes Atlanta" | $ 1,800.00 |
| 6421 | "JC Penney" | $ 400.00 |
| 6421 | "JC Penney" | $ 1,200.00 |
| 4764 | "Card Member [Services]" | $10,700.00 |
| 9356 | "MBNA America" | $18,900.00 |

The Card Member Services claim, the $400.00 JC Penney claim and the MBNA America claim were listed as liabilities of Mary Christman. The $1200.00 JC Penney claim and the Lowes Atlanta claim were listed as liabilities of Danah Christman.

eCAST timely filed proofs of claim as the assignee of the following named entities in the following amounts:

| Account No. | Assignor's Name as listed on Proof of Claim | Amount of Claim |
|---|---|---|
| 2463 | "General Electric/LOWES/RETAIL" | $ 1,930.38 |
| 6642 | "General Electric/JCP CONSUMER" | $ 1,032.28 |
| 4764 | "Chase Bank USA, NA" | $10,210.54 |
| 9356 | "Bank of America/FIA Card Services formerly MBNA" | $15,614.81 |

On April 11, 2007, Debtors filed objections to the four above-listed claims, challenging them on several grounds, including eCAST's standing as a holder of the claims. eCAST responded by filing amended proofs of claim. To each proof of claim eCAST attached certain account statements and documents evidencing the bulk transfer of various accounts to eCAST from specified credit issuers, including MBNA and Chase. Debtors objected to the amended claims raising the following arguments:

2

1. Debtors allege that the amended Lowes claim is deficient because it does not document the transfer of the accounts from the acknowledged creditor, Lowes Atlanta, to eCAST. Debtors also assert that the claim should be disallowed because it includes interest and late fees in the absence of proof that Debtors agreed to pay interest and late fees.[2] Debtors also assert that the proof of claim fails to itemize principal, interest and other charges, as required by Form 10. Lastly, Debtors assert that any claim held by eCAST has been "satisfied by payment."

2. Debtors similarly challenge eCAST's standing to file the JC Penney claim. The objection notes that the account number on the JC Penney claim does not match any account number on Debtors' schedule of unsecured, non-priority claims. Debtors also argue that the claim should be disallowed because it includes interest and late fees without evidence of Debtors' obligation to pay interest and late fees. Debtors also assert that the JC Penney claim has been "satisfied by payment."

3. Debtors object to the Chase claim because it does not itemize amounts due for principal, interest and other charges.[3] Debtors do not challenge eCAST's standing to file a proof of claim as Chase's assignee.

4. Debtors assert that the MBNA claim should be disallowed because it was filed late. Alternatively, Debtors argue that the Court disallowed the claim in its Order dated May 15, 2007. Debtors also assert, without further explanation, that eCAST's failure to "file an assignment of

---

[2]Debtors do not argue that they did not agree to pay any amount of interest or fees, but that eCAST's proof of claim does not document the agreed rate of interest or how fees were to be calculated.

[3]Because the account statement attached to the proof of claim shows new charges of $41.15 and no payment, Debtors' precatory paragraph requests that the claim be allowed in that amount.

3

the claim from MBNA America Bank, NA to Bank of America and/or FIA Card Services" renders eCAST without standing to file the claim. Lastly, Debtors object to the MBNA claim because of eCAST's failure to itemize principal, interest and other charges.

Briefs have been filed by the parties, and the matter is ready for decision.[4]

## Discussion

An unsecured creditor who desires to participate in an individual debt adjustment plan under Chapter 13 must file a proof of claim. A filed claim is deemed allowed unless an objection is filed. 11 U.S.C. § 502(a). Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 3001 prescribes the requirements for filing a proof of claim, two of which are particularly relevant to this case. First, Fed. R. Bankr. P. 3001(a) states that the proof of claim must "comply substantially" to the appropriate Official Form (i.e., Official Form 10). Second, when a claim is based upon a writing, Fed. R. Bankr. P. 3001(c) requires that an original or a copy of the document should be filed with the proof of claim.[5] If the writing has been lost or destroyed, a statement explaining the loss or destruction should be attached. If the documents are voluminous, Official Form 10 states that a summary of the supporting documents may be substituted. If a proof of claim is executed and filed in compliance with the Rules it constitutes *"prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The meaning of the term "amount of the claim" obviously refers to the total sum of the claim.

---

[4]A hearing was held at which no testimony was taken but argument was heard and eCAST offered three affidavits into the record which were admitted without objection.

[5]Notwithstanding the option of filing either an original or a copy as set forth in Rule 3001(c), Official Form 10 specifically directs a claimant not to send "copies of original documents."

4

Case 1:05-bk-06084-MDF    Doc 86    Filed 03/19/08    Entered 03/20/08 08:21:59    Desc
Main Document    Page 4 of 14

"'Validity' pertains to legal correctness and enforceability." *In re Hudson*, 260 B.R. 421, 435 (Bankr. W.D. Mich. 2001).

But while a proof of claim filed in compliance with Fed. R. Bankr. P. 3001 is *prima facie* valid, it does not follow that a debtor is compelled to accept that the entity filing the claim is the entity entitled to payment if the claimant is not the original creditor. In its brief, eCAST asserts that a debtor's inclusion of a creditor on Schedule "F" constitutes a judicial admission that the debt is owed to the creditor. eCAST's statement of law is correct, but this principle is not relevant to the within case because eCAST is not listed on Schedule "F." The debts eCAST claims are owed to it are listed as owing to other creditors. Thus, eCAST's allegation that "Debtors' objections are a technical exercise in form over substance" is misplaced. Ensuring that a claimant is the rightful owner of a claim is not a technical exercise.

   a.   *Prima facie validity of eCAST's proofs of claim*

A court's determination of whether an objected-to proof of claim should be allowed involves a series of proofs in which the burden of moving forward shifts between the parties. "The creditor's reward for complying with the requirements of Rule 3001 and Official Form 10 is that its proof of claim 'shall constitute prima facie evidence of the validity and amount of the claim,'" thus transferring to the objecting party the initial burden of going forward with evidence to refute the claim. *In re Burkett*, 329 B.R. 820, 826 (Bankr. S.D. Ohio 2005) (citing Fed. R. Bankr. P. 3001(f)). The objector must produce evidence that calls into question "at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny International, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). If the objecting party is successful in carrying this burden, then the claimant must "prove the validity of the claim by a preponderance of the

5

Case 1:05-bk-06084-MDF   Doc 86   Filed 03/19/08   Entered 03/20/08 08:21:59   Desc
Main Document      Page 5 of 14

evidence." *Id.,* 954 F.2d at 174 (citing *In re WHET, Inc*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983)); *See also In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005). If a proof of claim fails to comply with Rule 3001 and Official Form 10 and the debtor objects, the claimant cannot rest on its proof of claim. It must come forward with sufficient evidence to establish the claim's validity and amount. *In re Burkett*, 329 B.R. at 826.

Official Form 10 contains a series of numbered questions and requests for information. Question 5 asks for the total amount of the claim at the time the bankruptcy case was filed and includes a box to be checked if the amount being claimed includes "interest or other charges in addition to the principal amount of the claim." It further directs the claimant to "[a]ttach [an] itemized statement of all interest or additional charges" if the claim includes them. In the instant case, eCAST did not check the box or attach the requested itemized statements to any of the filed proofs of claim even though all four of the claims at issue include interest or additional charges beyond principal. Debtors argue that eCAST's failure to check the box or attach the information requires disallowance of the claims in their entirety. Case law fails to support Debtors' argument. Most courts have held that the failure to attach documents required by Fed. R. Bankr. P. 3001 and Official Form 10 is not, by itself, a basis for disallowance of a claim. *Id*. at 828 (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir.1991); *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147 (8th Cir. BAP 2004); *In re Relford*, 323 B.R. 669 (Bankr. S.D. Ind. 2005); *Isom v. eCast Settlement Corp. (In re Isom)*, 321 B.R. 756 (Bankr. N.D. Ga. 2005); *In re Guidry*, 321 B.R. 712 (Bankr. N.D. Ill. 2005); *In re Shaffner*, 320 B.R. 870 (Bankr. W.D. Mich. 2005); *In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005); *In re Mazzoni*, 318 B.R. 576 (Bankr. D. Kan. 2004); *In re Kemmer*, 315 B.R. 706 (Bankr. E.D. Tenn. 2004); *In re Shank*, 315 B.R. 799 (Bankr. N.D. Ga. 2004); *In re Jorczak*, 314 B.R. 474 (Bankr.

D. Conn. 2004); *In re Cluff*, 313 B.R. 323 (Bankr. D. Utah 2004). I find no reason to disagree with the majority on this issue and no reason to distinguish this case on its facts. Nonetheless, for purposes of this section of the Discussion, I must first determine whether these omissions deprive the claims of the *prima facie* presumption of validity.

In *In re Padilla*, 2006 WL 2090210 (Bankr. S.D. Tex. 2006), a creditor failed to check the box on its proof of claim that indicates that a claim includes interest. The court found that the claim was *prima facie* valid because the creditor had met the requirements of Form 10 by supplying the most recent account statement, which disclosed interest and other charges. *Id.* at *2. The *Padilla* court held that by reviewing the account statements the debtor easily could ascertain that the creditor was claiming interest and determine the amount claimed. In the instant case, account statements attached to eCAST's amended proofs of claim included statements for each account for September 2005 (the month in which Debtors' petition was filed), and the appended statements clearly included the amount and rate of interest. Accordingly, I conclude that eCAST's amended proofs of claim substantially comply with Form 10 and Fed. R. Bankr. P. 3001. Therefore, the four filed proofs of claim are entitled to a presumption of validity.

      b.     *Pre-petition payment of claims in full*

Based on the amounts listed on the account statements attached to eCAST's claims, Debtors argued that they paid the JC Penney, Lowes, and MBNA accounts in full before they filed their petition. Debtors base this assertion on the attached billing statements, which indicate that amounts due exceeded purchases. Debtors argue that without proof that balances existed prior to the dates of the attached statements, eCAST is not entitled to claim amounts allegedly incurred before the month the statement was issued. Debtors' position is not supported by the requirements of Fed. R. Bankr. P. 3001. A creditor is not required to reproduce an entire account

7

history from the date the account was opened. Rather, a creditor must provide sufficient documentation to substantiate the amount of the claim and the claim's validity. Once the creditor's initial burden of proof is met, the burden shifts to the debtor to introduce evidence to challenge the claim. The proofs of claim with attachments filed by eCAST, in conjunction with the judicial admissions contained in Schedule "F," substantiate both the amount of the claims and their validity. Debtors' demand for additional information did not shift the burden to eCAST to establish that the claims were outstanding.

      c.     *eCAST's standing to file the claims*

           1.     *The JC Penney Claim*

Debtors question eCAST's standing to file a claim for the debt they admittedly owe to JC Penney. They assert that eCAST failed to establish that it purchased the right to receive Debtors' obligation to JC Penney as listed on Schedule "F." To meet their burden, Debtors simply ask the Court to compare the face of the amended claim and its documentation to the relevant entries on Schedule "F."

When a claim has not been assigned, a claimant's standing is evident when the name of the creditor listed on Schedule "F" is compared to the name on the filed proof of claim. In this case, JC Penney was listed on Schedule "F" as the holder of two separate claims, one against each spouse individually. The account number for each debt was the same – 6421. The two claims totaled $1600.00 with $1200.00 attributable to Danah Christman and $400.00 attributable Mary Christman. In contrast, eCAST's proof of claim names only Danah Christman as the holder of a JC Penney account and lists a claimed amount of $1032.28, which is significantly less than the aggregate of the two claims as listed by Debtors. eCAST's proof of claim lists "General Electric/JCP CONSUMER," not JC Penney, as the assignor, which creates no linkage between

8

eCAST and the creditor listed in Debtors' schedules, JC Penney. Further, the account number listed on eCAST's proof of claim, 6642, does not match the account number on Schedule "F." Given these discrepancies, Debtors' challenge to eCAST's standing is justified and shifts the burden to eCAST to produce proof that it is a bona fide claimant.

In support of its right to payment as an assignee of the JC Penney claim, eCAST produced copies of monthly account statements for the period November 2004 to September 2005, inclusive. These statements bore an account number ending in "664-2" and listed the name and address of Danah Christman. A single line on the left center of the return stub read "Remit to MCCBG - JCPENNEY." However, the statements were not printed on specialized letterhead for JC Penney and the return address listed on the statement contained only a P.O. Box number in Orlando, Florida with no creditor name.

eCAST's ability to produce these ten account statements demonstrates that it had access to this information – information that ordinarily is confidential and not available to parties other than the credit card user, the issuer and its servicers or assignees. eCAST's possession of this information supports its assertion that it was the assignee of the account, but it does not establish definitively that it was an assignee of the account and not merely a servicer.[6] Thus, the account statements alone are not sufficient to carry eCAST's burden of proving that it obtained standing to file a claim in this bankruptcy case through an assignment of the claim.

---

[6]While the cryptic "Remit to" line on the return stub confirms that the account was a JC Penney account and that it may have been serviced by an entity known as MCCBG, it is not sufficient to show that eCAST was not merely the servicer of the account. I do not find it appropriate to require Debtors to prove that eCAST was a servicer rather than an assignee given that eCAST would be in the better position to prove its status.

9

The only other evidence attached to the JC Penney proof of claim that addresses eCAST's standing was a single page, single paragraph document entitled "Bill of Sale," which stated that certain corporate entities sold certain account receivables to eCAST in a Forward Flow Receivables Purchase Agreement executed on June 24, 2002. The corporate entities listed as Sellers in that transaction were the following: "Monogram Credit Card Bank of Georgia," "Montgomery Ward Credit Corporation," "GE Capital Financial, Inc.," and "General Electric Capital Corporation" (collectively, "Seller Banks"). Neither "JC Penney" nor "General Electric/JCP CONSUMER" were listed as one of the Seller Banks. Thus, the Bill of Sale does not support eCAST's assertion on Form 10 that it is the "assignee of General Electric/JCP CONSUMER."

At the hearing on Debtors' objections, eCAST introduced an affidavit of an employee of GE Consumer Finance, Inc. ("GECF") stating that GECF is "successor in interest to GE Capital Corporation, the holding company for GE Money Bank, FSB, successor in interest to Monogram Credit Card Bank of Georgia." The affidavit further states that the collective records of these institutions show that Danah Christman received a JC Penney credit card on July 24, 1991, that GECF serviced that account by providing monthly statements to Debtors, and that GECF and its predecessor banks sold their collective right to receivables from the account on June 24, 2002. This affidavit fails to lend additional support to eCAST's position because the affidavit does not show a nexus between the acknowledged creditor, JC Penney, and the entity from whom eCAST claimed to have received its assignment – "General Electric/JCP CONSUMER." I am unable to assume that "GE Money Bank" and "General Electric/JCP CONSUMER" are the same entity.

In summary, by virtue of Schedule "F," Debtors admit that they owe JC Penney approximately $1,600.00. eCAST asserts that it is the holder of that debt, but Debtors are not

10

Case 1:05-bk-06084-MDF    Doc 86    Filed 03/19/08    Entered 03/20/08 08:21:59    Desc
                    Main Document           Page 10 of 14

convinced of that assertion. To support its position, eCAST produced account statements, but these account statements do not prove by a preponderance of the evidence that eCAST is the assignee of these accounts. eCAST also produced a bill of sale listing itself as the purchaser of certain credit card accounts from certain banking entities, but none of those entities was the same party from whom eCAST claimed to have received its assignment. eCAST further produced an affidavit from a banking entity that once held rights to the account, but that entity was also not the same party from whom eCAST claimed to have received its assignment. Therefore, eCAST's standing having been placed at issue, it failed to carry its burden to prove the averments of its proof of claim. Accordingly, I conclude that Debtors' objection to eCAST's proof of claim on the JC Penney account must be sustained.

        2.     *The Lowes claim*

The objection to the Lowes claim must be sustained for similar reasons. eCAST submitted documentation with the amended Lowes proof of claim similar to that which it submitted with the amended JC Penney claim, namely, certain account statements and a bill of sale executed on June 24, 2002 between itself and the Seller Banks. Again, neither "General Electric LOWES/RETAIL" nor "Lowes" is listed among the Seller Banks on the bill of sale. Again, eCAST's access to the account statements does not prove that eCAST was an *assignee* of these accounts. In support of this claim, eCAST referenced the following notation contained on the face of Danah Christman's March 2005 account statement: "Please note that the name of the creditor has been changed. References to Monogram Credit Card Bank of Georgia on account documents/cards now mean GE Money Bank." Thus, a connection is established between GE Money Bank and Monogram Credit Card Bank of Georgia, which is listed as a Seller Bank.

However, eCAST alleged that it received its assignment from "General Electric/Lowes/Retail" not "GE Money Bank." Thus, even though the amounts listed on Schedule "F" for the Lowes claim are similar to the amount listed on the amended Lowes claim, and the account numbers match, the evidence is insufficient to sustain the burden of proof that was shifted to eCAST when Debtors filed their objection questioning whether eCAST was truly the owner of the claim.[7]

       3.    *The Chase claim*

Debtors do not challenge eCAST's standing to file a proof of claim as an assignee of Chase. Rather, Debtors argue that the Chase claim should be disallowed because it fails to itemize the amounts due for principal, interest and other fees. Again, a majority of courts hold that the failure to attach documents purportedly required by Fed. R. Bankr.P. 3001 and Official Form 10 does not provide a basis for disallowance of a claim. *See Burkett, supra.* Moreover, as discussed above, the account statements attached to the Chase claim provide sufficient information regarding the amounts of principal and interest comprising the total claim, and that total is very close to (but actually less than) the amount that Debtors admit that they owe to Chase. Accordingly, Debtors' objection to the Chase claim is without merit.

       4.    *The MBNA claim*

Debtors also questioned the standing of eCAST to file a claim on behalf of MBNA. The amended MBNA claim includes monthly account statements from September 2004 to September 2005, inclusive. The statements are printed on forms bearing the logo "MBNA America," and

---

[7] In making this ruling, I am fully cognizant of the amendment to Fed.R. Bankr. P. 3001 that indicates that a claim filer is not required to file with its proof of claim proof of its pre-petition purchase of that claim. I do not equate this amendment with a ruling that an assignee of a claim can never be required to produce proof of the assignment upon an appropriate objection by the debtor.

"MBNA America" is named as the entity to whom payment on the account should be made. The account number listed on these statements is the same as the account number included on Debtors' Schedule "F." The statement is addressed to Mary Christman, which corresponds to Debtors' indication on Schedule "F" that the MBNA account was her individual liability and not a joint obligation. The amended claim also includes a "Bill of Sale and Assignment of Loans" prepared on MBNA letterhead and dated November 1, 2005. MBNA America Bank, N.A. is listed as the Seller and eCAST is listed as the Buyer of certain "Forward Flow Accounts." eCAST alleges that Debtors' account was among those included in a post-petition sale and assignment.[8]

The MBNA claim contains sufficient indicia of validity, including Mary Christman's correct name, alias, account number and social security number, to establish its *prima facie* validity. Debtors failed to rebut that validity in their objection. In the absence of proof by Debtors regarding a competing claim filed by MBNA, or by another entity purporting to have an interest in that account, eCAST is not required to prove that Mary Christman's account was included in the "Purchase Agreement for Forward Flow accounts" referenced in the Joint Notice of Transfer of Claim filed in the case.[9] Therefore, the objection to the amended proof of claim will be overruled.[10]

---

[8] Whether the transfer was pre- or post-petition is of no consequence if the transfer occurred before the claim was filed. "If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or other evidence of the transfer." Fed.R. Bankr. P. 3001(e), Advisory Committee Notes to the 1991 Amendments.

[9] See footnote 7, *supra*.

[10] Debtors' objection to the amended MBNA claim based on issues of timeliness cannot be sustained. The amended claim clearly states that it is intended to amend an original claim that had been timely filed and to which an objection was made. If objections to properly amended

13

**Conclusion**

I find that the Chase and MBNA proofs of claim were executed and filed in accordance with Rule 3001 and, therefore, constitute *prima facie* evidence of the validity and amount of the claims. Debtors failed to meet their burden to produce evidence sufficient to rebut the validity of those claims. Therefore, to the extent Debtors' object to the validity of the claims, their objections will be overruled. As to Debtors' objections as to the amount of the claims, their objections also will be overruled.

I find that both the amended JC Penney proof of claim and the amended Lowes claim are not entitled to the presumption of *prima facie* validity because they provide no transactional nexus between the acknowledged original creditor and eCAST. Moreover, the account numbers, the identities of the account holders, and the amounts listed as claims are not sufficiently similar to provide proof that eCAST is the owner of the JC Penney and Lowes accounts. Therefore, Debtors objections to these claims will be sustained.

An appropriate order will be entered.

By the Court,

/s/ Mary D. France
Bankruptcy Judge

Date: March 19, 2008

*This document is electronically signed and filed on the same date.*

---

claims could be sustained due to untimeliness, then debtors could delay their objections to claims until the last day for filing claims and creditors would be powerless to file amendments.